**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 16, 2023**

# In the Court of Appeals of Georgia

A23A0598. TAYLOR v. THE STATE.

BROWN, Judge.

Justin Michael Taylor entered a negotiated plea of guilty to one count each of aggravated battery and cruelty to children in the first degree for breaking the leg of a child left in his care and delaying medical attention for that child to treat the broken leg, and one count of family violence battery for causing visible bodily harm to his biological child.[1] The trial court sentenced him to 41 years with the first 20 to be served in confinement and the remainder to be served on probation. Taylor appeals

---

[1] The trial court nol prossed two aggravated assault charges and three additional family violence battery charges.

from the trial court's order denying his motion to withdraw his guilty plea, as amended, contending that he did not act knowingly, freely, or voluntarily. We affirm.[2]

The record shows that the prosecutor set forth the following factual basis for Taylor's guilty plea. On September 5, 2017, Taylor's biological child was dropped off by its mother for a short visit. When Taylor returned the child to its mother, she noticed a visible injury to the inside of the child's thigh.

Two years later, on June 29, 2019, the mother of a different child left that child in the custody of Taylor while she went shopping for approximately "13 minutes." When she returned, she noticed bruising on the child's head and face and took him to a local hospital. Upon examination, it was determined that the child suffered a spiral fracture to his leg and he was transported to Scottish Rite for additional treatment. Taylor was interviewed by police and initially blamed another child present in the home for causing the injuries. He then stated that the child injured himself when he fell and eventually told the police investigator that "he threw the child accidently into a ceiling fan."

---

[2] This is the second appearance of this case before this Court. In Case Number A20A1334, we remanded the case to the trial court to consider Taylor's timely motion to withdraw his guilty plea.

The transcript of the guilty plea hearing shows that on January 8, 2020, Taylor entered a negotiated plea to the charges. The colloquy between Taylor and the trial court prior to entry of the plea shows that Taylor acknowledged that he understood the charges against him and the rights he was waiving by entering a guilty plea, including the right to a jury trial, the presumption of innocence, the right to require the State to prove guilt beyond a reasonable doubt, the right to subpoena and confront witnesses, the right to testify and present evidence on his own behalf, and the right to the assistance of counsel during trial. In addition, Taylor confirmed that he had discussed his legal rights with his attorney before signing the waiver of rights form, he understood the charges to which he was pleading guilty, he had discussed the maximum and minimum sentences with his attorney, no one had promised a benefit or threatened or coerced him into entering the plea, and he was entering the plea voluntarily. After the trial court accepted the plea, Taylor told the trial court that he "didn't do it intentionally, it just kind of happened. And I want them to know that I'm really sorry and I'm just really, really, sorry."

Taylor filed a motion to withdraw his guilty plea, which he later amended. Taylor alleged that his guilty plea was not knowingly, freely, or voluntarily entered because his incarceration prior to the entry of his plea — which was primarily spent

in isolation and protective custody in the Jackson County jail — amounted to undue coercion. Following a hearing, the trial court denied the motion, concluding that Taylor's plea was entered knowingly and voluntarily, and that there was insufficient evidence that it was the product of coercion. Taylor appeals, raising the same argument in his sole enumeration of error.

> After sentencing, a defendant may withdraw [his] guilty plea only to correct a manifest injustice which exists if the plea was in fact entered involuntarily[,] without an understanding of the nature of the charges[, or where a defendant is denied effective assistance of counsel]. When a defendant challenges the validity of [his] guilty plea in this way, the State bears the burden of showing that the defendant entered [his] plea knowingly, intelligently, and voluntarily. The State may meet its burden by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. In evaluating whether a defendant's plea was valid, the trial court should consider all of the relevant circumstances surrounding the plea. The court's decision on a motion to withdraw a guilty plea will not be disturbed absent an obvious abuse of discretion.

(Citation and punctuation omitted.) *McClain v. State*, 311 Ga. 514, 515 (858 SE2d 501) (2021); *Powell v. State*, 309 Ga. 523, 524 (1) (847 SE2d 338) (2020).

"Moreover, in ruling on the motion, the trial court is the final arbiter of all factual disputes raised by the evidence. If evidence supports the trial court's findings, we must affirm." (Citation and punctuation omitted.) *Montford v. State*, 317 Ga. App. 417, 418 (731 SE2d 91) (2012). See also *Ranger v. State*, 330 Ga. App. 578 (768 SE2d 768) (2015).

Taylor's mother testified at the hearing on the motion to withdraw his guilty plea that Taylor was placed in protective custody at the jail prior to his plea hearing because his mother was concerned for his safety. She testified that people were threatening him on social media and threatening to burn down her house and that because of her concerns, Taylor was placed in protective custody. She testified that he was isolated while in protective custody and that this isolation caused him to "take whatever they [would] give [him] to be out of [isolation]." She further averred that Taylor was not himself and that his confinement in protective custody "affected his choice to [t]ake a plea in this case."

Taylor's trial counsel testified that he had been an attorney for over 20 years, 16 of which had been spent as a public defender. He testified that, prior to Taylor's guilty plea, he spoke with Taylor about his case regularly because the public defender's office was right next to the jail. He also explained the State's evidence

5

against Taylor and discussed with him the pros and cons of the State's case. After lengthy discussions, counsel and Taylor agreed that it was in Taylor's best interest to take a "negotiated disposition." Counsel testified that he reviewed Taylor's rights with him; that Taylor indicated that he understood those rights; and that Taylor indicated that he wanted to enter a guilty plea. Counsel further testified that he reviewed the plea sheet with Taylor; that it was Taylor's choice to plead guilty; and that Taylor's decision was "absolutely" freely and voluntarily made. Finally, counsel testified that at no time during any of their discussions did Taylor indicate that his status at the jail in "protective confinement or otherwise" was causing stress or affecting his ability to work with counsel.

Based on this record, we conclude that the trial court did not err in determining that Taylor made a knowing, voluntary, and intelligent plea of guilty. See *Hall v. State*, 344 Ga. App. 196, 199 (809 SE2d 475) (2018). Indeed, the trial court did not abuse its discretion in finding insufficient evidence that Taylor's guilty plea was the product of coercion based on his having been placed in protective custody/isolation prior to the entry of his plea. Taylor's mother testified that his confinement in protective custody/isolation coerced him into pleading guilty, but trial counsel disputed this testimony, stating that at no time during any of their meetings did Taylor

6

indicate that his status at the jail in "protective confinement or otherwise" caused him stress or affected his ability to work with counsel. "[T]his conflict in testimony is a matter of witness credibility, which the trial court was authorized to decide against [Taylor]." (Citation and punctuation omitted.) *Hall*, 344 Ga. App. at 199. Moreover, whether or not Taylor's situation coerced him into pleading guilty was a question of fact for the trial court to resolve. See *Frost v. State*, 286 Ga. App. 694, 697 (1) (649 SE2d 878) (2007) ("[d]uress is a question of fact for the trial court to resolve, whose decision we will only reverse if it constitutes an abuse of discretion") (citation and punctuation omitted). See also *Shaheed v. State*, 276 Ga. 291, 291-292 (2) (578 SE2d 119) (2003) (rejecting defendant's claim that his lack of faith in trial counsel and pressure he felt from his family and the jury selection process "coerced" him into pleading guilty); *Hall*, 344 Ga. App. at 199 (statement by chief jailer to appellant that he was "innocent until proven broke" did not compel a finding of duress). Accordingly, we affirm the trial court's order denying Taylor's motion to withdraw his guilty plea.

*Judgment affirmed. McFadden, P. J., and Markle, J., concur*.