# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v KING

Docket No. 162327. Argued on application for leave to appeal March 1, 2023. Decided July 28, 2023.

Frank King was charged in the Macomb Circuit Court as a fourth-offense habitual offender with breaking and entering, MCL 750.110a(2). Before trial, defendant moved to proceed *in propria persona* and to terminate his relationship with his appointed counsel. The trial court, Joseph Toia, J., granted defendant's motion but kept appointed counsel to serve as defendant's advisory counsel. On the first day of trial, defendant pleaded no contest in exchange for an agreement pursuant to *People v Cobbs*, 443 Mich 276 (1993), capping his minimum sentence at 72 months, to be served concurrently with a sentence defendant was already serving in an unrelated case. Defendant's advisory counsel apparently handled details of the plea negotiations, and advisory counsel indicated during sentencing that he had worked out the *Cobbs* agreement with the prosecution. Defendant was sentenced in accordance with the *Cobbs* agreement, but he later filed a delayed application for leave to appeal in the Court of Appeals. Defendant argued that his conviction should be reversed because he was denied the right to counsel at critical stages of the proceeding because his waiver of counsel was invalid. The Court of Appeals denied the application in an unpublished order. Defendant applied for leave to appeal in the Supreme Court, and the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 505 Mich 851 (2019). On remand, the Court of Appeals, JANSEN and BORRELLO, JJ. (SWARTZLE, P.J., concurring *dubitante*), affirmed in an unpublished per curiam opinion. Defendant again sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on the application. 508 Mich 938 (2021).

In an opinion by Justice BOLDEN, joined by Chief Justice CLEMENT and Justices ZAHRA, BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court *held*:

Defendant was not required to affirmatively invoke his constitutional right to counsel in order to preserve that right, nor was he required to object to the invalid waiver of the right to counsel. Therefore, the forfeiture doctrine under *People v Carines*, 460 Mich 750 (1999), did not apply. Because defendant's waiver of his right to counsel was invalid, he was deprived of counsel during critical stages of the proceedings, requiring automatic reversal.

1. Choosing self-representation necessarily requires waiving the right to be represented by counsel; therefore, the Constitution requires a defendant to give a knowing, voluntary, and intelligent waiver of the right to counsel in order to exercise the right to self-representation. Before granting a defendant's request to proceed *in propria persona*, a trial court must substantially comply with the factors set forth in *People v Anderson*, 398 Mich 361 (1976), by inquiring whether: (1) the defendant's request to represent themselves is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. Additionally, before granting such a request, the court also must comply with the requirements of MCR 6.005(D), which, among other things, requires the court to advise the defendant of the charge against them, the maximum possible and any mandatory minimum prison sentences for the offense, and to offer the defendant the opportunity to consult with a lawyer.

2. In this case, the question was not whether the waiver was invalid; rather; it was whether a defendant may forfeit the right to counsel by failing to object to an invalid waiver of their right to counsel after requesting to represent themselves. As stated in *Carines*, an error involving a constitutional right may be forfeited if not preserved. In *People v Vaughn*, 491 Mich 642 (2012), however, the Court stated that certain constitutional rights are of central importance to the quality of the guilt-determining process and the defendant's ability to participate in that process, and therefore, these rights do not require affirmative invocation to be preserved. In *Vaughn*, the Court noted that, unlike the right to a public trial, the right to counsel was such a right because its purpose would be nullified by a determination that an accused's ignorant failure to claim their rights removes the protection of the Constitution because it is counsel's responsibility to protect an accused from conviction resulting from the accused's ignorance of their legal and constitutional rights. Therefore, unlike the right to public trial, the right to counsel is a fundamental right that cannot be forfeited. Thus, without a valid waiver of the right, a defendant remains entitled to the right to counsel for every critical stage of the criminal proceedings. Although the Court previously held that denial of counsel during a preliminary examination was not a structural error and therefore was subject to harmless-error review, denial of counsel during the critical stages of proceedings, including pretrial preparation, jury selection, opening statements, the judge's instructions, and examination of witnesses, is structural error that renders the result of any trial unreliable and thus requires automatic reversal. Further, a valid no-contest plea at a later stage of proceedings does not necessarily or fully cure the deficiencies at the earlier waiver-of-counsel stage, especially with respect to whether defendant should have known to object to the waiver.

Reversed and remanded to the trial court for further proceedings.

Justice VIVIANO, concurring *dubitante*, was unwilling to conclude that the outcome reached by the majority opinion was wrong given the issues and arguments before the Court, but he questioned whether a different result would have been reached if two additional issues had been raised and argued by the parties. First, because defendant's conviction arose from a plea of no contest, to reverse the conviction, the Court had to find some error in or affecting the plea. However, the majority opinion reversed defendant's conviction on the basis of the invalid waiver of the right to counsel that occurred before trial and before the plea. Generally, a defendant's guilty or no-contest plea bars the defendant from raising on appeal any errors—constitutional or

otherwise—that might have impacted the question of factual guilt.  Thus, a defendant may raise on appeal only those defenses and rights that implicate the very authority of the state to bring a defendant to trial and would preclude the state from obtaining a valid conviction against the defendant.  Second, defendant had standby counsel who actively participated in the plea.  The majority opinion relied on *People v Lane*, 453 Mich 132 (1996), for the proposition that standby counsel cannot act as Sixth Amendment Counsel.  But *Lane* held only that the presence of standby counsel did not legitimize an otherwise invalid waiver-of-counsel inquiry and did not consider whether standby counsel who actively participated in the proceedings could satisfy the Sixth Amendment right to counsel.  Assuming that standby counsel was constitutionally sufficient, the Court would need to determine whether defendant's no-contest plea waived or cured the earlier deprivation of counsel.  Because the parties did not address these issues, Justice VIVIANO agreed with the result reached by the majority opinion on the issues before the Court.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 28, 2023

## STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                  No. 162327

FRANK KING,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

BOLDEN, J.

This case concerns whether the forfeiture doctrine articulated in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999), applies where a self-represented defendant fails to object when the trial court fails to obtain a valid waiver of the right to counsel. We hold it does not. Absent a defendant's valid waiver of their right to counsel, deprivation of counsel during critical stages of the criminal proceedings is a structural error subject to automatic reversal, even when a defendant formally requests to represent themself.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was charged with breaking and entering as a fourth-offense habitual offender. The trial court appointed counsel for defendant. A few months before trial, defendant moved the trial court to terminate his relationship with his appointed attorney, and he requested to proceed *in propria persona*. The trial court held a hearing on the motion on March 22, 2018. At the hearing, defendant claimed that defense counsel had failed to pursue his previously filed pro se motions, adequately investigate defenses he wished to pursue, and represent him in the way that he requested. Defense counsel responded that he could not endorse any of the motions that defendant had filed on his own behalf and that defendant would have to either engage a different attorney who was willing to pursue the motions or represent himself.[1] During the hearing to determine whether defendant could represent himself, the following exchange between the trial court and defendant occurred:

> *The Court*: How do you want to proceed, [defendant], because I'm not going to appoint another attorney. You've already been through several. This matter is set for trial.
>
> [*Defendant*]: I'll proceed in pro per, your Honor.
>
> *The Court*: All right. I'm going to keep [defense counsel] on for advisory, as advisory counsel only.
>
> [*Defense Counsel*]: Very well.
>
> *The Court*: Be prepared to try your case, sir.
>
> [*Defendant*]: Yes, sir. Thank you, your Honor.

---

[1] The pro se motions at issue included a motion to quash and a motion to dismiss, which defendant had filed in October and November 2017.

Following this exchange, the trial court granted defendant's request to represent himself. However, the trial court ordered defendant's now former defense counsel to act as advisory counsel to defendant. Trial was scheduled to begin approximately six weeks later, on May 1, 2018.

At a subsequent pretrial hearing held in April 2018, the prosecutor indicated that defendant did not wish to enter a plea. The prosecutor estimated that, if defendant were to be found guilty as charged, his sentencing guidelines would reflect a minimum sentence range of 72 to 240 months' imprisonment, and the prosecutor would request that defendant be sentenced to a minimum prison term of 15 to 20 years, or 180 to 240 months. Before the hearing, the prosecutor suggested to advisory counsel that the court might consider a *Cobbs*[2] agreement, which could result in a sentence running concurrently with a sentence that defendant was already serving for an unrelated conviction.[3] However, at that time, defendant was not interested in this *Cobbs* agreement and wished to proceed to trial.

---

[2] In *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993), this Court held that at the request of a party, before the trial court enters a plea agreement the court may state on the record, based on the information then available to the court, "the length of the sentence that . . . appears to be appropriate for the charged offense." Over time, accepted plea offers in which the parties exchange specific sentencing information when formulating their plea agreement have become colloquially known as "*Cobbs* agreements." See, e.g., *People v Brown*, 492 Mich 684, 705; 822 NW2d 208 (2012) (YOUNG, C.J., concurring in part and dissenting in part) (explaining that a genuine *Cobbs* agreement is one in which a defendant enters a guilty plea in exchange for a specific sentence disposition by the trial court).

[3] Defendant was also on parole at the time of this offense and was advised during the proceedings that his sentence in this case and his sentence for the unrelated conviction would run consecutively with his sentence for the parole violation.

3

On the first day of trial, following jury selection, preliminary instructions, opening statements, and some witness testimony, defendant decided to enter a plea. He entered a no-contest plea in exchange for a *Cobbs* agreement that capped the minimum sentence imposed at 72 months, to be served concurrently with the sentence he was serving in his other case. Advisory counsel apparently handled the details of the sentencing arrangement that were understood to be part of the *Cobbs* agreement. The plea colloquy included multiple references to the advisory attorney as defendant's "attorney," although the court also noted that defendant represented himself. At the sentencing hearing, advisory counsel indicated that he had spent a great deal of time working out the *Cobbs* agreement, and defendant was sentenced consistent with that agreement.

Defendant sought leave to appeal his conviction, and the Court of Appeals denied his delayed application for leave to appeal. *People v King*, unpublished order of the Court of Appeals, entered February 20, 2019 (Docket No. 346559). Defendant then sought leave to appeal in this Court, and we remanded the case to the Court of Appeals as on leave granted "to address: (1) whether the defendant's waiver of his Sixth Amendment right to counsel was constitutionally valid; and (2) if so, what effect, if any, the defendant's subsequent no contest plea had on that waiver." *People v King*, 505 Mich 851 (2019).

On remand, the Court of Appeals affirmed. *People v King*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2020 (Docket No. 346559). To obtain relief, the Court of Appeals determined that defendant was required to establish: (1) the error had occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial

4

proceedings independent of defendant's innocence. *Id*. at 7, citing *Carines*, 460 Mich at 763-764.

Applying the *Carines* test, the Court of Appeals held that the first three factors of the test were met. The purported waiver of counsel was invalid and thus constituted plain error because the trial court had "failed to comply with the substance of [*People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976),] and the court rule, [MCR 6.005(D)] . . . ." *King*, unpub op at 8. The plain error also affected defendant's substantial rights. See *id*. However, the panel opined that the "underlying purposes" of the right to counsel were upheld during the *Cobbs* plea because "defense counsel played a significant role in the plea process" and thus defendant had "actually reaped the benefits of being represented by counsel despite purporting to represent himself." *Id*. at 10.[4] Further, defendant showed some knowledge of his rights by citing *Faretta v California*, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), and echoing this Court's language in *Anderson*, 398 Mich at 367-368. For these reasons, the panel held that the fourth prong had not been met, recognizing that "[r]eversal is not justified under the fourth *Carines* prong if the 'underlying purposes' of the right at issue have been alternatively upheld." *King*, unpub op at 8-9, quoting *People v Cain*, 498 Mich 108, 119; 869 NW2d 829 (2015). Judge SWARTZLE concurred *dubitante*, agreeing that the majority correctly applied the *Carines* plain-error test but noting the absurdity of requiring a defendant, who is requesting to proceed *in propria persona*, to object in order to preserve the appellate right to challenge

---

[4] The Court of Appeals also recognized that the mere presence of "standby" or advisory counsel did not cure the error in this case. See *King*, unpub op at 10 n 6.

5

the waiver of legal counsel.  See *King* (SWARTZLE, J., concurring *dubitante*), unpub op at 1-2.

Defendant sought leave to appeal in this Court.  In response, we ordered oral argument on the application, directing the parties to address (1) whether the Court of Appeals erred by concluding that the trial court's failure to comply with the requirements of *Anderson* and MCR 6.005(D) did not warrant reversal, and (2) whether the standard of review for unpreserved constitutional errors from *Carines* should apply when a criminal defendant argues on appeal that their waiver of counsel was invalid.  *People v King*, 508 Mich 938, 938-939 (2021).

## II.  ANALYSIS

### A.  FORFEITURE v WAIVER

The United States Supreme Court has made clear that "[w]aiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' "  *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993), quoting *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938).  A waiver extinguishes the right, as well as any right to pursue an alleged error on appeal.  See *Olano*, 507 US at 733; see also *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) ("One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.") (quotation marks and citation omitted).  On the other hand, when a litigant fails to timely assert a right or object to an alleged error, it is deemed to be *forfeited*, but the error is not extinguished.  *Id*. at 215; *Olano*, 507 US at

6

733. Notably, preserved structural errors[5] are a limited class of constitutional errors that are not subject to harmless-error analysis, see *Arizona v Fulminante*, 499 US 279, 309; 111 S Ct 1246; 113 L Ed 2d 302 (1991), but are instead subject to automatic reversal, *Neder v United States*, 527 US 1, 7; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

As properly recognized by the Court of Appeals, unpreserved constitutional errors, including structural errors, are reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 764. This Court recently modified the *Carines* "plain error" test as applied to unpreserved structural errors in *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022). In addressing the third prong, also known as the prejudice prong, the *Davis* Court held that "a forfeited structural error creates a formal presumption that this prong of the plain-error standard has been satisfied." *Id*. at 75. "The formal rebuttable presumption in cases of forfeited structural error . . . shift[s] the burden to the prosecutor to demonstrate that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding." *Id*. at 76. In such instances, the prosecutor must present specific facts that "affirmatively demonstrate that, despite the error, the overall fairness, integrity, and reputation of the trial court proceedings were preserved." *Id*.

---

[5] "[T]he defining feature of a structural error is that it affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver v Massachusetts*, 582 US 286, 295; 137 S Ct 1899; 198 L Ed 2d 420 (2017) (quotation marks, citation, and brackets omitted). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Id*. at 294-295.

7

## B. RIGHT TO COUNSEL

The right to the assistance of counsel at all critical stages of criminal proceedings for an accused facing incarceration is protected by the Sixth Amendment, applicable to the states through the Fourteenth Amendment. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004), citing *Maine v Moulton*, 474 US 159, 170; 106 S Ct 477; 88 L Ed 2d 481 (1985), and *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963); see also US Const, Ams VI and XIV. The right to self-representation is also protected by the Sixth and Fourteenth Amendments. See *Faretta*, 422 US at 818-821. Additionally, both the right to self-representation and the right to counsel are protected by the Michigan Constitution. Const 1963, art 1, §§ 13 and 20. Trial is a critical stage of criminal proceedings. *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). A plea hearing also qualifies as a critical stage. *Iowa v Tovar*, 541 US 77, 87; 124 S Ct 1379; 158 L Ed 2d 209 (2004).

Choosing self-representation necessarily requires waiving the right to be represented by counsel. *Faretta*, 422 US at 835. Therefore, the Constitution requires a defendant to give a "knowing, voluntary, and intelligent" waiver of the right to counsel in order to exercise the right to self-representation. *Tovar*, 541 US at 87-88. Before granting a defendant's request to proceed *in propria persona*, a trial court must substantially comply with the factors set forth in *Anderson*, 398 Mich at 367-368, and MCR 6.005(D) for a defendant to effectuate a valid waiver of the right to counsel. *Russell*, 471 Mich at 191-192. Under *Anderson*, 398 Mich at 367-368, the trial court must find that the following three factors have been met: (1) the defendant's request to represent themself is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and

8

voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation "will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." Additionally, MCR 6.005(D) provides that the trial court "may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first":

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

## C.  FORFEITURE OF THE RIGHT TO COUNSEL

The first issue we address is the applicable standard of review when a defendant requests to represent themself but fails to object to an invalid waiver of their right to counsel.[6] It is undisputed that defendant's waiver of his right to counsel was invalid.

The crucial question here is whether a defendant may forfeit the right to counsel.  In *People v Vaughn*, 491 Mich 642, 654-655; 821 NW2d 288 (2012), this Court addressed

---

[6] The prosecution urges this Court to review the issue as a request to withdraw a plea and apply the standard articulated for such requests as discussed in *People v Cole*, 491 Mich 325; 817 NW2d 497 (2012), because defendant waived his right to trial and elected to plead no contest pursuant to a *Cobbs* agreement.  We decline to review the issue in the manner suggested by the prosecutor.  The issue raised in this appeal concerns the invalid waiver of the right to counsel (which occurred both before trial was completed and before the plea agreement was entered), not defendant's ability to withdraw his plea.  See *King*, 508 Mich at 939.  Alternatively, the prosecution argues that the modified plain-error standard articulated in *Davis*, 509 Mich at 67-68, applies.  As discussed below, because defendant's claim of error is preserved, this Court's recent modification of the standard for reviewing unpreserved structural errors in *Davis* does not apply.

9

the application of the *Carines* forfeiture rule to the right to public trial. We held that the *Carines* forfeiture doctrine was applicable to unpreserved issues involving violations of the Sixth Amendment public-trial right because, although structural in nature, this right was not one of those few rights that cannot be waived absent informed personal consent. See *id*. at 655-657, 664.

In reaching this conclusion, the *Vaughn* Court distinguished between constitutional rights that require an *affirmative* invocation and the narrow class of constitutional rights that are preserved *absent* a personal and informed waiver:

> While certain constitutional rights are preserved absent a personal waiver, those rights constitute a narrow class of foundational constitutional rights that "are of central importance to the quality of the guilt-determining process and the defendant's ability to participate in that process." Indeed, each of the foundational constitutional rights that are preserved absent a personal waiver necessarily implicates a defendant's *other* constitutional rights. For example, the purpose of the right to counsel "would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution" because it is counsel's responsibility to "protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights . . . ." Because the right to counsel "invokes, of itself, the protection of a trial court," preservation of the right does not require an affirmative invocation. [*Id*. at 655-657 (citations omitted).]

*Vaughn* concluded that a violation of the right to a public trial, which was at issue in that case, was not an error that " 'necessarily affect[ed] qualitatively the guilt-determining process or the defendant's ability to participate in the process' " and therefore was subject to preservation requirements. *Id*. at 657 (citation omitted). However, as stated, *Vaughn* recognized at the outset that a violation of the right to counsel is an error that does not require preservation. See also *id*. at 656 n 42 (stating that under *New York v Hill*, 528 US 110, 114; 120 S Ct 659; 145 L Ed 2d 560 (2000), violation of the right to counsel is a

10

structural error that "fall[s] outside the ordinary issue preservation requirements because [it] require[s] a personal waiver"); *Vaughn*, 491 Mich at 656 n 44 (stating that under *Hill* the right to counsel "exist[s] outside our ordinary preservation requirements").

According to *Vaughn*, the right to counsel, unlike the right to a public trial, is a fundamental right that cannot be forfeited and is preserved "absent a personal waiver." See *id*. at 655-657 ("Because the right to counsel 'invokes, of itself, the protection of a trial court,' preservation of the right does not require an affirmative invocation.") (citation omitted). Accordingly, a defendant need not affirmatively invoke their right to counsel in order to preserve that right—the right is preserved absent a personal and informed waiver, and it is not forfeitable. Therefore, without a valid waiver, a defendant *remains entitled* to the right to counsel for every critical stage of criminal proceedings. See *Russell*, 471 Mich at 189-190 ("[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, 'is the standard, not the exception,' in the absence of a proper waiver.") (citation omitted).

Requiring a defendant who did not make a knowing and intelligent waiver of the right to counsel to recognize and object to their own waiver as invalid would be an impractical rule. Because "forfeiture is the failure to make the timely assertion of a right," and the right to counsel is the "standard" and "does not require an affirmative invocation," it defies logic to argue that such a right *could* be forfeited. See *id*.; *Olano*, 507 US at 733; *Vaughn*, 491 Mich at 657. In other words, when there is an invalid waiver of a defendant's right to counsel, the defendant remains entitled to full representation at each critical stage of the criminal proceedings.

11

In *People v Lewis*, 501 Mich 1, 3-4; 903 NW2d 816 (2017), this Court considered whether deprivation of the right to counsel during a preliminary examination entitled a defendant to automatic reversal. We concluded that *Coleman v Alabama*, 399 US 1, 11; 90 S Ct 1999; 26 L Ed 2d 387 (1970), controlled, narrowly holding that denial of counsel at a preliminary examination is not a structural error and is, therefore, subject to harmless-error review. *Lewis*, 501 Mich at 3-4, 9-10. Importantly, *Lewis* differentiated the denial of counsel at a preliminary examination from denial of counsel at other critical stages of the proceedings, including the denial of counsel at trial. See *id*. at 10-11 ("*Coleman* does not permit us to presume that a defendant, who was ultimately convicted at an otherwise fair trial, suffered no harm from the absence of counsel at his preliminary examination.").

*Lewis* is categorically different from the instant case. The defendant in *Lewis* was only denied counsel during a preliminary examination. *Id*. at 3. Harmless-error analysis applied in *Lewis* because after defendant's preliminary examination, he was found guilty beyond a reasonable doubt in an otherwise fair trial. *Id*. at 11. Here, because defendant's invalid waiver of counsel occurred before his trial began, defendant was denied his right to counsel during most of the critical stages of the proceedings. See *Williams*, 470 Mich at 641; *Russell*, 471 Mich at 187-188; *Tovar*, 541 US at 87.

As a result of the invalid waiver of his right to counsel, defendant was deprived of his right to counsel, at a minimum, during (1) pretrial preparations, including at least one pretrial hearing, (2) jury selection, (3) opening statements, (4) judge's instructions, and (5) direct and cross-examination of key witnesses. Because defendant was deprived of his right to counsel at critical stages of the criminal proceedings, including at trial, the error is subject to automatic reversal. See *Gideon*, 372 US at 344; *Russell*, 471 Mich at 194 n 29

("The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal.").

We are unpersuaded by the prosecutor's remaining arguments that defendant is not entitled to relief because any error was extinguished by defendant's eventual plea agreement and because his standby counsel acted as his trial counsel for Sixth Amendment purposes. As recognized by Judge SWARTZLE, a valid no-contest plea at a later stage of proceedings "does not necessarily or fully cure the deficiencies at the earlier waiver-of-counsel stage, especially with respect to whether defendant should have known to object to the deficient waiver." *King* (SWARTZLE, J., concurring *dubitante*), unpub op at 2. Indeed, the focus of the plea hearing was to ensure the plea was understanding, voluntary, and accurate. See MCR 6.302. Whether defendant understood his right to counsel and properly waived that right in accordance with *Anderson* and MCR 6.005(D) was not addressed.[7] Further, although counsel was present at trial and the plea hearing, he served as standby counsel, which is not constitutionally sufficient. See *People v Lane*, 453 Mich 132, 138; 551 NW2d 382 (1996) ("The presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards. The presence of standby counsel is not recognized as an exception to the *Anderson* or court rule requirements."), citing *People v Dennany*, 445 Mich 412, 446; 519 NW2d 128 (1994) (opinion by GRIFFIN, J.).

---

[7] Whether entry of a no-contest plea can be considered valid when the earlier proceedings have been so corrupted by deprivation of counsel without a valid waiver is a question that this opinion need not decide.

## III. CONCLUSION

Defendant was not required to affirmatively invoke his Sixth Amendment right to counsel in order to preserve that right. Defendant was not required to object to the invalid waiver of the right to counsel, and the *Carines* forfeiture doctrine does not apply. Because defendant's waiver of his right to counsel was invalid, he was deprived of counsel during significant portions of the critical stages in the proceedings, including trial, and the error is subject to automatic reversal. Accordingly, we reverse the Court of Appeals judgment and remand to the trial court for further proceedings.

Kyra H. Bolden
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                               No. 162327

FRANK KING,

       Defendant-Appellant.

_____

VIVIANO, J. (*concurring dubitante*).

In our adversary system, courts are largely constrained to the issues presented and developed by the parties. It is generally inappropriate for a court to reframe a case, raising new issues and arguments. For this reason, I am constrained to concur in the majority opinion—but I do so *dubitante*, which is to say that I have doubts about the soundness of the outcome but am unwilling, given the issues and arguments before us, to conclude it is wrong. See *Black's Law Dictionary* (11th ed) (explaining that "*dubitante*" is a "term . . . placed in a law report next to a judge's name, indicating that the judge doubted a legal point but was unwilling to state that it was wrong").

In particular, I question whether a different result would have been reached had two additional issues or arguments been properly raised. It appears to me that because defendant's conviction arose from a plea of no contest, to reverse the conviction we must find some error in or affecting the plea. The majority reverses on the basis of an error— the invalid waiver of the right to counsel prior to the partial trial—that occurred before the plea. The majority does not consider whether this error had any relationship to defendant's

plea in this case.  Generally, however, a defendant's guilty plea bars the defendant from

obtaining relief based on constitutional violations that occurred prior to the plea:

> [A] guilty plea represents a break in the chain of events which has preceded
> it in the criminal process.  When a criminal defendant has solemnly admitted
> in open court that he is in fact guilty of the offense with which he is charged,
> he may not thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty plea.  He
> may only attack the voluntary and intelligent character of the guilty plea by
> showing that the advice he received from counsel was not within the
> standards set forth in [previous caselaw].  [*Tollett v Henderson*, 411 US 258,
> 267; 93 S Ct 1602; 36 L Ed 2d 235 (1973).]

Thus, when a defendant enters a plea of guilty or no contest, any errors that might

have impacted the question of factual guilt—constitutional or otherwise—are rendered

irrelevant.  See *Menna v New York*, 423 US 61, 62 n 2; 96 S Ct 241; 46 L Ed 2d 195 (1975)

("The point of [*Tollett* and its progeny] is that a counseled plea of guilty is an admission of

factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the

issue of factual guilt from the case.  In most cases, factual guilt is a sufficient basis for the

State's imposition of punishment.  A guilty plea, therefore, simply renders irrelevant those

constitutional violations not logically inconsistent with the valid establishment of factual

guilt and which do not stand in the way of conviction, if factual guilt is validly

established.").

This Court, in *People v New*, 427 Mich 482, 491; 398 NW2d 358 (1986), recognized

the *Tollett* rule and explained further that

> a defendant, after pleading guilty, may raise on appeal only those defenses
> and rights which would preclude the state from obtaining a valid conviction
> against the defendant.  Such rights and defenses "reach beyond the factual
> determination of defendant's guilt and implicate the very *authority* of the
> state to bring a defendant to trial . . . ."  [*People v*] *White*, 411 Mich[ 366,]
> 398[; 308 NW2d 128 (1981)] (MOODY, J., concurring in part and dissenting

2

in part.)  In such cases, the state has no legitimate interest in securing a conviction.  On the other hand, where the defense or right asserted by defendant relates solely to the capacity of the state to prove defendant's factual guilt, it is subsumed by defendant's guilty plea.

Under this logic, numerous courts have held that claims based on an earlier deprivation of counsel are waived when a defendant decides to plead guilty and the plea is not related to the deprivation.[1]

In the present case, this issue and the relevant authorities have not been raised or discussed.[2]  Moreover, it is not entirely clear how they would apply.  It would seem that the earlier deprivation of counsel at trial could be waived by defendant's subsequent plea.  But defendant observes that he was never given a proper advisement of his right to counsel,

---

[1] See, e.g., *Fields v Attorney General of Maryland*, 956 F2d 1290, 1296 (CA 4, 1992) ("[The defendant] alleges that because [defense counsel] did not attend the rearraignments, he was denied counsel at a critical stage of the proceedings in violation of the Sixth Amendment. . . .  Yet this claim concerns an alleged constitutional deprivation that occurred prior to [the defendant's] guilty plea and is unrelated to it.  *Tollett* therefore bars this claim."); *United States v Bohn*, 956 F2d 208, 209 (CA 9,1992) (holding that the defendant's plea waived the argument that he was deprived of Sixth Amendment counsel during an *in camera* hearing that determined the validity of one of his defenses); *Davila v State*, 831 P2d 204, 206 (Wy, 1992) ("Denial of the right to representation does not implicate 'the very power of the state to bring the defendant into court to answer the charge brought against him,' and would not have prevented a trial.") (citation omitted); *State v Spates*, 64 Ohio St 3d 269, 273; 595 NE2d 351 (1992) (claim regarding denial of counsel at the preliminary hearing barred by *Tollett*); *Powell v State*, 309 Ga 523, 528; 847 SE2d 338 (2020) (stating that, even if the defendant had properly requested new counsel, his claim that the trial court erred by denying his request need not be considered because, "[a]s a general rule, a guilty plea waives all defenses except that based on the knowing and voluntary nature of the plea").

[2] Although defendant pleaded no contest rather than guilty, this distinction would not appear to matter for purposes of *Tollett* and *New*.  See *People v Cole*, 491 Mich 325, 332 n 6; 817 NW2d 497 (2012) ("No-contest pleas are essentially admissions of all the elements of the charged offense and are treated the same as guilty pleas for purposes of the case in which the no-contest plea is entered."), citing *New*, 427 Mich at 493 n 10.

either before trial or as part of the plea process. It might be contended, therefore, that the deprivation related to or affected defendant's decision to plead no contest. *Tollett*, of course, does not prevent a defendant from challenging the voluntariness of the plea. Thus, even if the deprivation of counsel during the partial trial was waived under *Tollett*, defendant may argue—and indeed in this case has argued—that the deprivation of counsel during the partial trial created a separate error by rendering the plea involuntary.

On the other hand, defendant had standby counsel who actively participated during the plea. The majority relies on *People v Lane*, 453 Mich 132, 138; 551 NW2d 382 (1996), for the proposition that standby counsel cannot act as Sixth Amendment counsel. But in *Lane*, we merely said that "[t]he *presence* of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards. The presence of standby counsel is not recognized as an exception to" the rules requiring advisement of the defendant's rights to counsel. *Id*. at 138 (emphasis added). We did not consider whether standby counsel who actively participated in the proceedings could satisfy the Sixth Amendment right to counsel. The federal circuit courts appear to be split on this question, but those that have found standby counsel to be constitutionally sufficient have raised strong arguments worth our consideration in an appropriate case.[3] The Court of Appeals

---

[3] Compare *United States v Oreye*, 263 F3d 669, 672 (CA 7, 2001) ("[The attorney], while labeled standby counsel, was functionally counsel, period. We are mindful of the many cases which hold or imply that appointment of standby counsel does not satisfy the Sixth Amendment, if the defendant wants to be represented. . . . But we do not submit gracefully to the tyranny of labels. If the defendant's counsel provides all the assistance required by the Sixth Amendment, the fact that he is called 'standby counsel' would not violate the amendment."); *McClinton v United States*, 817 A2d 844, 859 (DC, 2003) ("In essence, as in *Oreye*, standby counsel for [the defendant] 'was functionally counsel.' "); *United States v Ross*, 703 F3d 856, 871 (CA 6, 2012) ("Despite the failure of the trial court to appoint full-time counsel, participation by standby counsel during a competency hearing may be

4

has apparently sided with those courts holding that standby counsel is always insufficient to satisfy the Constitution. See *People v Willing*, 267 Mich App 208, 227-228; 704 NW2d 472 (2005). The prosecutor has not addressed the relevant caselaw or otherwise developed this issue such that we can decide it now. But even assuming that the standby counsel here was constitutionally sufficient, we would need to determine whether defendant's no-contest plea waived or cured the earlier deprivation of counsel.

My own research has discovered no case involving the precise circumstances before us. Given the lack of guidance on these complicated matters and, more importantly, the parties' failure to address the relevant issues, I agree with the result reached by the majority on the questions we confront today. But because those questions are the narrow ones presented by the parties, I see nothing in the majority opinion that would foreclose the arguments I have sketched above.[4] For these reasons, I concur *dubitante*.

David F. Viviano

---

sufficient to overcome a denial of counsel claim."); with *United States v Taylor*, 933 F2d 307, 312 (CA 5, 1991) (rejecting the contention that standby counsel could satisfy the constitutional right to counsel).

[4] To its credit, the majority forthrightly acknowledges that its opinion does not address whether defendant understood his right to counsel and validly waived that right at the plea hearing. See *ante* at 13. And the majority also appears to leave open the issues I have raised here for another day. See *id*. at 13 n 7.

5